

**U.S. Department of Justice**

*Joshua S. Levy*
Acting United States Attorney
District of Massachusetts

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

August 8, 2023

Astor Chance
126 Border St.
Unit 104
Boston, MA 02128-2073

Re:  Your Duty Complaint dated July 27, 2023

Dear Mr. Chance:

Our office is in receipt of your correspondence dated July 27, 2023, alleging that you are the victim of racially motivated hate crimes and unlawful eviction.

After looking in the Massachusetts Housing Records, we found three cases before the Housing Court that have either being initiated by you or by another person against you. The case numbers of these cases are: 14H84CV000189, 15 H84CV000025, and 13H84CV000414. The U.S. Attorney's Office cannot give legal help or advice to individuals. However, given that your allegations are related to your housing status, a private attorney or legal aid office may be able to assist you. The Boston or Massachusetts Bar Association may be able to refer you to an attorney that specializes in these types of matters. You can reach the Boston Bar Association's attorney referral service at (617) 742-0625 and the Massachusetts Bar Association's attorney referral service at (617) 654-0400. The Massachusetts Bar Association also has a website for more information on attorney services at http://www.masslawhelp.com.

The U.S. Attorney's Office is not an investigative agency and is not in a position to investigate your allegations. This office does not represent individuals in matters or lawsuits you may wish to bring against another person, company or government agency. It does not appear that your complaint is a federal matter and as such is not within the jurisdiction of this office.

This office prosecutes federal criminal offenses and represents the United States of America in certain civil matters. The U.S. Attorney represents the United States of America and its agencies, such as the U.S. Department of Interior or the U.S. Department of Agriculture, in civil matters.

If you cannot afford an attorney, there are some services that provide free or low cost legal representation.  For referrals to Boston-area free and low-cost legal services, please call the Legal Advocacy and Resource Center's hotline at (800) 342-LAWS or (800) 342-5297 or visit their website at https://vlpnet.org/get-help/.

Your correspondence will be kept on file at our office for 1 year.

Sincerely,

RK
Duty Paralegal

*34 pages + 2 page cover*
*41 pages LETTER*



U.S. Department of Justice

**Rachael S. Rollins**
*United States Attorney*
*District of Massachusetts*

Main Reception: (617) 748-3100
11•wvjustice.govlusaolma

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

## DUTY COMPLAINT FORM

*Please note some fields are required.   Please print clearly.

Received
U.S. Attorney's Office - MA

JUL 27 2023

*Date: 27 JULY 2023

* First Name: ASTOR

* Last Name: CHANCE

*Address: 126 BORDER ST. UNIT 104
E. BOSt

* City: BOSTON          *State: MA          Zip Code: 02128-2073

* Day time Phone Number: (617) 970·3662

*Email: astor.chance.@gmail.com

*Briefly summarize your complaint including:

- if you have contacted this office about the matter before and when;
- if you contacted any other public agencies about the matter and when;
- the name of any attorney representing you in this matter (if any); and
- if your matter has an action pending in federal, state or other courts, please provide the court and case caption.

34 pages 1-12 page
41 pages LEASE



U.S. **Department of .Justice**

*Rachael S. Rollins*
*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100
11•wwjustice.govlusaolma

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

## DUTY COMPLAINT FORM

\*Please note some fields are required.   Please print clearly.

Received
U.S. Attorney's Office - MA

JUL 27 2023

\*Date: 27 JULY 2023

\* First Name: ASTOR

\* Last Name: CHANCE

\*Address: 126 BORDER ST, UNIT 104
E. BOST

\* City: BOSTON          \*State: MA       Zip Code: 02128 - 2073

\* Day time Phone Number: (617) 970.3662

\*Email: astor.chance @ gmail.com

\*Briefly summarize your complaint including:

- if you have contacted this office about the matter before and when;
- if you contacted any other public agencies about the matter and when;
- the name of any attorney representing you in this matter (if any); and
- if your matter has an action pending in federal, state or other courts, please provide the court and case caption.

## DUTY COMPLAINT FORM

*Date: 27 JULY

*First Name: ASOR

*Last Name: CHANCE

I AM INVOLVED IN (2) LAWSUITS, AND VICTIM OF
MULTIPLE, "RACE HATE CRIMES."
TO WIT ATTORNEY(S) FOR DEFENDANTS, OPENLY
THREATENS ME, AND THEFT OF MY PRIVATE PROPERTY.
THE UNLAWFUL ACTS ARE CLEARLY STATED, DEFENDANTS
ANSWER LOCATED IN THEIR POSITION STATEMENT, AND
(42) FORTY TWO PAGE LEASE BPDA UNIT ADDENDUM.
ATTORNEY FOR DEFENDANT WANTS TO EVICT ASOR CHANCE,
WITHOUT A FAIR TRIAL. THEY REFUSE TO FOLLOW THE
MASS RULES CV. PROC. AND WISH TO FORCE PLAINTIFF
AGAINST HIS FREE-WILL. TO SIGN A BPDA UNIT ADDENDUM
AND ONE YEAR LEASE BUT FORFEIT, HIS FILED FOR
DAMAGES, IN (2) TWO LAWSUITS.

1ˢᵗ copy received.

**BPDA Unit Addendum**

**Boston Redevelopment Authority d/b/a Boston Planning & Development Agency ("BPDA")**
**IDP Unit Addendum**

This Addendum to the lease dated ___7/12/23___ (the "Lease") by and between
_____ (hereinafter referred to as "Landlord") and _____
("Resident(s)") for the unit numbered _____ ("Unit") is hereby incorporated into and made part
of the aforesaid Lease, and shall be renewed and expire under the same terms and conditions of
the Lease. In the event that there are conflicting provision between this Addendum and the
Lease, this Addendum shall control.

1.      Occupancy of the Unit is restricted to households with incomes conforming to the
applicable limits set by agreement of the BPDA and Landlord, and certified as eligible under
BPDA program guidelines. Resident's household has been certified as eligible under applicable
guidelines. The amount of rent charged by Landlord for the Unit during the Lease term shall
conform to applicable limits as set by the BPDA.

2.      Resident acknowledges that only those persons identified as household members at the
time of BPDA eligibility certification may occupy the Unit. Resident understands that permitting
any other person (except minor children born to or adopted by a certified occupant) to occupy
the Unit without prior BPDA certification shall constitute a material breach of the Lease.

3.      Resident shall notify Landlord immediately of any change in circumstances which may
affect the household's eligibility under BPDA guidelines, including, but not limited to, the
following:
        a.      anticipated addition of new occupants or departure of existing occupants;
        b.      change in income, assets, or subsidized rental assistance; and
        c.      change in full-time student status of any occupant.

4.      Resident is advised that continued eligibility under BPDA guidelines is a condition of
occupancy of the Unit. To assist in the determination of eligibility, Resident shall be required at
least annually to complete and deliver to Landlord an Affidavit of Eligibility, in a form satisfactory
to the BPDA ("Affidavit"), signed by all occupants age eighteen (18) years or older who are
intended to be members of Resident's household.

5.      Resident shall respond promptly to requests by Landlord to furnish said Affidavit and any
additional supporting documentation identified in the Affidavit or deemed necessary by
Landlord to establish Resident's continued eligibility to occupy the Unit. Failure to furnish
complete and accurate materials in a timely manner shall result in the household's being
deemed ineligible for the Unit, and shall constitute a material breach of the Lease.

6.      Should Resident cease to qualify as an eligible household under BPDA guidelines at any

time during the term of the Lease, Resident will no longer be authorized by the BPDA to occupy the Unit after the Lease expiration.

7.      Resident hereby certifies his/her/their understanding that should the household cease to qualify as an eligible household under BPDA guidelines at any time during the term of the Lease, Resident and Landlord may not under any circumstances renew the Lease, and Resident shall be required to vacate the Unit at the Lease expiration date.

8.      Resident hereby acknowledges that any use of the Unit or activity thereon which is inconsistent with the purpose of this Agreement is expressly prohibited. Any action or attempt by Resident to sublease or otherwise rent all or part of the Unit, for any length of time, to any person(s) outside of the BPDA-approved household shall be grounds for immediate termination of the Lease.

9.      The Lease for the Unit shall be for a term of not less than one (1) year, unless by mutual agreement between Resident and Landlord.

10.     Landlord shall not terminate the tenancy or refuse to renew Resident's Lease except:

   a.   For violation of the terms and conditions of the Lease;
   b.   For violations of applicable federal, state or local law;
   c.   For completion of the tenancy period for transitional housing, if applicable;
   d.   In the event a Household ceases to qualify under BPDA eligibility guidelines;
   e.   For violations of reasonable rules and regulations adopted by Landlord from time to time which are applicable to all residential units in the building; or
   f.   For other good cause.

11.     Any termination or refusal to renew the Lease shall be preceded by Landlord's service on Resident of a written notice specifying the grounds for the action not less than thirty (30) days prior to the proposed termination date, except in the event of a termination/voiding of tenancy pursuant to M.G.L. c. 139, s.19.

12.     Any of the following provisions, if contained in the Lease, are hereby declared invalid and unenforceable:

   (i)   Agreement by Resident to be sued, to admit guilt or to a judgment in favor of Landlord in a lawsuit brought in connection with the lease.

   (ii)  Agreement by Resident that Landlord may take, hold, or sell personal property of household members without notice to Resident and a court decision on the rights of the parties. This prohibition does not apply to an agreement by Resident concerning disposition of personal property remaining in the Unit after Resident has moved out of the Unit. Landlord may dispose of such personal property in accordance with state law.

(iii)     Agreement by Resident not to hold Landlord legally responsible for any action or failure to act, whether intentional or negligent.

(iv)     Agreement of Resident that Landlord may maintain a lawsuit against Resident without notice to Resident.

(v)     Agreement by Resident that Landlord may evict Resident or household members without instituting a civil court proceeding in which Resident has the opportunity to present a defense, or before a court decision on the rights of the parties.

(vi)     Agreement by Resident to waive any right to a trial by jury.

(vii)     Agreement by Resident to waive Resident's right to appeal, or to otherwise challenge in court, a court decision in connection with the Lease.

(viii)     Agreement by Resident to pay attorneys' fees or other legal costs even if Resident wins in a court proceeding by Landlord against Resident. Resident, however, may be obligated to pay costs if Resident loses.

We hereby certify our understanding of the above and agree to abide by the terms of this Addendum.

LANDLORD:                                  RESIDENT(S):


By: _____          By: _____
      (Signature)                                        (Signature)

Name: _____          Name: _____

Date: _____          Date: _____


                                                    By: _____
                                                    (Signature)

                                                    Name: _____

                                                    Date: _____

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK SUPERIOR COURT
3 PEMBERTON SQUARE, BOSTON, MA

SUFFOLK, SS

CIVIL ACTION:
23-1641 D AND
23-1613 B.

ASTOR D. CHANCE,
PLAINTIFF,

V.
1.) GREP ATLANTIC LLC. (MGMT COMPANY)
CORPORATE SERVICE COMPANY/RESIDENT AGENT
84 STATE ST. BOSTON, MA 02109
2.) TRINITY BORDER RESIDENTIAL LLC. (OWNER)
CT CORPORATE SYSTEMS/RESIDENT AGENT
155 FEDERAL ST. BOSTON, MA 02110
DEFENDANT(S).

MEMORADUM BY PLAINTIFF

TO ESTABLISH WRITTEN LEGAL

DEMAND FOR A JURY TRIAL,

IN 23-1641 D, AND 23-1613 B.

NOW COMES THE PLAINTIFF, ASTOR D. CHANCE, WHO DOTH HEREIN
REQUEST ALLOWANCE OF THIS WRITTEN DEMAND FOR A
TRIAL BY JURY. I INADVERTANTLY IN HASTE DID NOT
IN THE COMPLAINT, INDICATE MY "COVER SHEET," ENTRY, ON
BOTH CIVIL ACTIONS.
SIGNED: UNDER THE PAINS AND PENALTIES OF PERJURY.

Astor D. Chance, PRO SE
ASTOR D. CHANCE
126 BORDER ST. UNTT 104, E. BOSTON, MA 02128
(617) 970-3662

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK SUPERIOR COURT
3 PEMBERTON SQUARE. BOSTON, MA

SUFFOLK, SS

CIVIL ACTIONS:
23-1641 D
23-1613 B

ASTOR D. CHANCE,
PLAINTIFF

V.

1.) GREP ATLANTIC, LLC.
2.) TRINITY BORDER RESIDENTIAL
    LLC.

## PLAINTIFF'S MOTION TO CONSOLIDATE
## 23-1641 D AND 23-1613 B
## INTO ONE LAWSUIT

NOW COMES THE PLAINTIFF, ASTOR D. CHANCE, WHO DOTH HEREIN MOVE TO, COMBINE BOTH AFOREMENTIONED LAWSUITS INTO ONE COHERENT CIVIL COMPLAINT.

THE PLAINTIFF FEELS CONFIDENT JUSTICE WILL BE BETTER SERVED TO MORE EFFICIENTLY ADJUDICATE BOTH "VALID CAUSES OF ACTION," AT THE SAME TIME.

ALL MATERIAL FACTS AND ELEMENTS ARISE UNDER THE SAME LEASE AGREEMENT, AND PLAINTIFF'S ABILITY TO WORK AND MAKE INCOME, WHILE RESIDING IN HIS "LEASED PLACE OF RESIDENCE," AT 126 BORDER ST. UNIT 104 E. BOSTON, MA 02128

SIGNED: UNDER THE PAINS AND PENALTIES OF PERJURY.

Astor D. Chance, PRO SE
ASTOR D. CHANCE
126 BORDER ST. UNIT 104, E. BOSTON, MA 02128
(617) 970-3662

SUFFOLK SUPERIOR COURT
3 PEMBERTON SQUARE BOSTON, MA

SUFFOLK, SS

CIVIL ACTION:
23-1641 D

ASTOR D. CHANCE,
PLAINTIFF

V.
1.) GREP ATLANTIC, LLC.
2.) TRINITY BORDER RESIDENTIAL, LLC.
DEFENDANTS.

PLAINTIFF'S
MOTION FOR PRELIMINARY
TO PERMENANT INJUNCTION

NOW COMES THE PLAINTIFF ASTOR D. CHANCE, WHO DOTH HEREIN MOVE, THAT A TEMPORARY TO PERMANENT RESTRAINING ORDER, BE SANCTIONED AGAINST THE DEFENDANTS, IMMEDIATELY FORTHWITH.

THE DEFENDANTS ARE TRYING TO FORCE HIM, AGAINST HIS WILL, TO SIGN AND ENDORSES, HIS FORFEITURE OF NAMED DAMAGES HE SEEKS IN HIS LAWSUIT, WITHOUT COMPENSATION.

USING ADDENDUM OF BPDA, AT P 12, i, ii, RESIDENT TO BE SUED... LANDLORD MAY TAKE, HOLD, SELL PERSONAL PROPERTY OF RESIDENT. PARAGRAPH iii, iv v vi vii viii THE PLAINTIFF STATES ARE UNDENIABLE STATEMENTS OF, UNLAWFUL ACTS OF SEDITION, AND/OR ACTS OF REBELLION AGAINST THE UNITED STATES OF AMERICA. THE DEFENDANTS CANNOT BE ALLOWED TO IGNORE, AND REFUSE TO ADHERE TO THE MASS RULES C.V. PROC, ETAL ADDITIONALLY IT IS ALLOWED, FOR THE DEFENDANTS TO REFUSE A REQUEST FOR DOCUMENTS IN DISCOVERY". DEFENDANTS' P 4. STATEMENT MCAD, TREAT AS "CONFIDENTIAL", IS A STATEMENT, THE PLAINTIFF HAS A LEGAL RIGHT TO SEE. HEARSAY AND INNUENDO ARE INADMISSIBLE, IN A COURT OF LAW. DEFENDANTS CANNOT SEEK TO PREVAIL IN THE LAWSUIT BY HIDING PERTINENT INFORMATION FROM THE PLAINTIFF.

P V, EVICT WITHOUT CIVIL COURT PROCEEDINGS P vi RESIDENT FORFEITS RIGHT TO JURY TRIAL, I DO NOT. P vii I DO NOT WAIVE RIGHT TO APPEAL, P viii MAKES NO SENSE. I AM UNABLE TO SIGN THE BPDA UNIT ADDENDUM, AND/OR 2023 " LEASE", BECAUSE MY LAWSUIT HAS NOT BEEN COMPLETED IN ITS ADJUDICATION, BY SUFFOLK SUPERIOR TRIAL COURT, WITHOUT THE OPPORTUNITY TO BE PROPERLY HEARD, IN A COURT ROOM.

P. 1 of 2

THE PLAINTIFF FEARS FOR HIS LIFE
THE DEFENDANTS STATE CLEARLY, THEY ARE WILLING
TO ENGAGE IN CRIMINAL ACTS, AND REFUSE TO LITIGATE
IN A LAWFUL MANNER.
I ASK MY LAWSUITS BE HEARD IN FEDERAL
DISTRICT COURT, WHERE THERE ARE VICTIM WITNESS
ADVOCATES, TO ENURE A FAIR TRIAL.
THE FEDERAL BUREAU OF INVESTIGATION MUST
INVESTIGATE CRIMINAL ASPECT, DEFENDANT(S)
ACTS.
THE U.S. DEPT. OF JUSTICE, MUST BE NOTIFIED
AND A COMPLAINT ENTERED ON ASTOR CHANCE'S
BEHALF.

SIGNED: UNDER THE PAINS AND PENALTIES OF
        PERJURY.
Astor D. Chance, PRO SE
ASTOR D. CHANCE
126 BORDER ST. UNIT 104
E. BOSTON, MA 02128
(617) 978-3662

P. 2 of 2

# NOTICE TO DEFENDANT[*] REGARDING ABUSE PREVENTION (RESTRAINING) ORDER.

**THIS IS INFORMATION ABOUT THE ABUSE PREVENTION ORDER THAT MAY HELP YOU UNDERSTAND THE TERMS OF THE ORDER.   PLEASE READ THE ORDER CAREFULLY.**

**A restraining order is a court order.** This means that ONLY a judge can change the order. The person who requested the order CANNOT change or end the order without returning to court. Even if the plaintiff[**] requests, agrees to, or allows you to do things forbidden by the order, you will be in violation of the restraining order unless a judge has changed it to permit the conduct.

**A restraining order is a civil order but a violation of the order is a criminal offense.** If you are found guilty of violating a restraining order, you can go to jail for up to 2 ½ years and / or be placed on probation. A criminal conviction (even a continuance without a finding) can (among other things) affect your ability to obtain employment, public housing, or citizenship, or subject you to deportation. If the police observe a violation of a restraining order or have probable cause to believe that you have violated the restraining order, the police are required to arrest you. If you are on probation, violation of a restraining order could also be a violation of your probation.

**If you are ordered not to abuse the plaintiff, this means that:**
- You cannot physically assault or threaten the plaintiff.
- You cannot do anything that gives the plaintiff reason to fear that you might cause the plaintiff physical harm.
- You must not use force or a threat of any kind to make the plaintiff have sex unwillingly.

**If you are ordered to have no contact with the plaintiff, this means that:**
- You cannot live with the plaintiff.
- You must stay away from the plaintiff at the distance indicated on the order, usually a stated number of feet or yards.
- You cannot contact the plaintiff in any way. This includes, but is not limited to, phone calls, text messages, emails, cards, and gifts. You may not contact the plaintiff through friends, relatives (including children), neighbors, or anyone else, or by sending or posting messages on Facebook, Twitter, SnapChat, LinkedIn, or any other social network site, unless specifically allowed in the restraining order.
- If you are somewhere and the plaintiff comes to that same location, you must leave that place as quickly as possible, even if you were there first.

**If you are ordered to leave a residence, this means that:**
- You must leave the residence immediately and stay away from that address while the order is in effect. You must stay away from the address even if the plaintiff is not there. If the residence is an apartment, you may be ordered to stay away from the entire building, even if the lease is in your name.
- You cannot damage the residence in any way.
- You cannot shut off any utilities or interrupt mail delivery to the plaintiff. These orders apply even if the lease and / or utilities are in your name.

**If you are ordered to stay away from the plaintiff's work, this means:**
- You must stay away from the place where the plaintiff works as long as the order is in effect. You must stay away from that address even if the plaintiff is not there at the time.

---

[*] The defendant is the person the order is issued against.
[**] The plaintiff is the person who asked the court to issue the order.
FA-17 (8/14)



# RESOURCES & INFORMATION FOR TENANTS

*Updated December 2020*

### *Required by the Housing Stability Notification Act*

If you are a Boston tenant, you may be eligible for help from the following agencies. Some income limits and other eligibility criteria may apply.

Document digitally signed using RENTCafé eSignature services. Document ID: 43648782.9

| | | |
|---|---|---|
| *For help resolving landlord/tenant matters, including evictions, housing search assistance, referrals for legal services, and applications for financial assistance, visit:* **boston.gov/housing-stability** or call (617) 635-4200. | For help with rental assistance, rent arrears, and/or moving expenses, visit:<br>**State Rental Relief Fund (RAFT)**<br>mass.gov/covid-19-getting-help-with-housing-costs or contact 211<br>**City Rental Relief Fund**<br>boston.gov/rental-relief or contact 311 | For legal help and advocacy in evictions, contact:<br>**Great Boston Legal Services**<br>(617) 371-1234<br>**Harvard Legal Aid Bureau**<br>(617) 495-4408<br>**Legal Services Center of Harvard Law School**<br>617-390-2535 |

## OFFICE OF HOUSING STABILITY TENANTS' RIGHTS IN AN EVICTION CASE

It is important that you consult with a lawyer as soon as possible. As a tenant, you may choose to, **but do not have to,** move by the move out date in the notice to quit. **ONLY THE COURT CAN ORDER YOU TO LEAVE YOUR HOME.** The Office of Housing Stability can refer you to an attorney and provide other eviction resources. Visit boston.gov/eviction-questions for more information. There is a Federal moratorium on evictions. You might qualify but need to fill out a CDC declaration form on boston.gov/eviction-questions.

### NOTICE TO QUIT

*Landlord provides the tenant with a Notice to Quit (in most cases)*
- The amount of notice will vary depending on the type of tenancy. In most cases, it will be 14 or 30 days or a rental period notice.

### COURT COMPLAINT

*Landlord provides the tenant with a summary process Complaint*
- The Summons and Complaint will be hand-delivered by a constable/sheriff OR left at the tenant's apartment and sent by first class mail.
- The Summons and Complaint will likely list the court date, answer date, the court location, and how to access your hearing by phone or teleconference. **PAY ATTENTION TO THESE DATES.**
- Most hearings will be held by Zoom. If you need access to a computer, please call one of the legal resources listed above.
- The tenant will likely have at least 2.5 weeks' notice of the court date. More information about your court date can be found on masscourts.org.
- **During your hearing, you may have access to a free lawyer. YOU MUST ASK TO SPEAK TO THIS LAWYER.**

### FILE ANSWER AND DEMAND FOR JURY TRIAL

*Tenant has the right to file an Answer and Demand for Jury Trial, and other documents by the deadline ("Answer Date") in the Complaint*
- The tenant may file with the court and give the landlord (or landlord's attorney) an Answer and Demand for Jury Trial by the Answer date listed in the Complaint.
- The Answer explains any defenses or counterclaims the tenant has to the landlord's claim for possession, any rent due, and any lease violations. Counterclaims are claims that the tenant has against the landlord such as bad conditions or mishandling a security deposit.
- By the same deadline, the tenant has the right to file and serve discovery requests (requests for information from the landlord about the case) and a Demand for Jury Trial.



*Use the QR code or visit boston.gov/tenant-notification to view this document in additional languages.*

This document is for informational purposes only and does not constitute legal advice from or on behalf of the City of Boston.



COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
ONE ASHBURTON PLACE BOSTON MA 02108

SUFFOLK, SS

ASTOR D. CHANCE
    COMPLAINTANT/PLF.

V.

1.) TRINITY MANAGEMENT, LLC
2.) GREYSTAR MANAGEMENT
SERVICES
    RESPONDANT/DEE.

RECEIVED
MAY 11 2023
MCAD
BOSTON

MCAD DOCKET NO:
23 BPR 00 851

COMPLAINTANT'S REBUTTAL TO
RESPONDANT'S ANSWERS AND POSITION
<u>STATEMENT</u>

FIRST: THE COMPLAINTANT HAD THE LAWFUL RIGHT, TO FULL AND complete
2. DISCLOSURE ON WHO HIS LANDLORD AND MANAGEMENT COMPANY
3. WERE, AND HAVE BEEN, SINCE MARCH 10, 2017, WHEN HE
4. ENDORSED/SIGNED HIS APARTMENT LEASE.
5. THE COMPLAINTANT HAD BEEN DENIED THE PEACEFUL ENJOYMENT,
6. OF HIS HOME AND UNIT RESIDENCE. THE RESPONDANTS ARE
7. IN "BREACH OF CONTRACT" OF M.G.L. LANDLORD/TENANT LAW,
8. AND "THE CONSTANT, AND REPETATIVE NATURE OF THE RACIALLY
9. MOTIVATED HATRED I HAVE SUFFERED.
10. IN COUNT FOUR, COMPLAINTANT CLEARLY STATES, THE RESPONDANTS
11. ARE, "ENGAGED IN GRAND SCHEME OF DECETT" THE COMPLAINTANT
12. CAN NOT CALCULATE, HOW MANY TIMES HE HAS BEEN LIED TO
13. BY THE STAFF OF THE RESPONDANTS. THOSES LIES AND
14. REFUSAL OF SERVICES, FREEDOM FROM REPRISAL OR
15. RETALIATION ACTS, CONSTITUTE UNLAWFUL BEHAVIOR.
16. THE ADMISSION OF THE RESPONDANTS, IS PROOF OF THE VALIDITY
17. OF THE COMPLAINTANTS ASSERTION, THE RESPONDANTS ARE,
18. INDEED ENGAGED IN "FRAUDULENT BEHAVIOR AND/OR" ACTS.
19. THE INVESTIGATORY REVIEW OF THE RESPONDANTS, MADE IT
20. "DE FACTO" A COMPULSIVE NECESSITY TO MAKE FULL
21. DISCLOSURE, "WE ARE NOT, WHO WE SAID WE ARE."

( 1 ) OF FIVE, A.D.C.

2. WE HAVE BEEN DECEIVING TENANTS FOR YEARS, SO THEY ARE UNABLE
3. TO FILE A LAWSUIT AGAINST THE RESPONDANTS.
4. THE FREE-WILL ADMISSION, PROVES THE RESPONDANTS GUILTY OF
5. FRAUD, TO EVADE LEGAL PROSECUTION, FOR UNLAWFUL DISCRIMIN-
6. ATORY ACTS AGAINST THE COMPLAINTANT. <u>FRAUD HAS ALREADY ATTACHED</u>,
7. IN ORDER TO KEEP IN ACCORDANCE WITH M.G.L., LEGAL COUNCIL
8. FOR THE RESPONDANTS WOULD NEED TO FILE A "MOTION TO AMEND," THE
9. CAPTION AREA, TO PROPERLY REFLECT ALL PARTIES.
0. COMPLAINTANT FEELS THIS DEVELOPMENT, SUFFICIENTLY ENOUGH
1. ESTABLISHES THE CONTINUOUS FRAUDULENT NATURE, OF HAVING
2. TO COMMUNICATE WITH THE RESPONDANTS OR THEIR LEGAL
3. COUNCIL. THEY WILL ALL TELL LIES, UNTIL THEY ARE FORCED
4. TO PAY COMPENSATORY AND PUNITIVE DAMAGES, FOR (6-7)
5. SIX TO SEVEN YEARS OF CREATING A "HOSTILE LIVING ENVIRONMENT."
6. * <u>SECOND:</u> THE COMPLAINTANT, SPECIFICALLY, FILED HIS COM-
7. PLAINT BASED ON; DESPARATE TREATMENT, HE WAS TREATED
8. DIFFERENTLY, DUE TO HIS RACE AND COLOR.
9. * THE COMPLAINTANT ASKED, HOW MANY OF THE OTHER HEADS OF
0. HOUSEHOLDS WERE TOLD TO PRODUCE THEIR STATE AND
1. FEDERAL TAX STATEMENTS FOR YEARS 2020 AND 2021?
2. * IF THE QUANITY WAS ZERO, THEREIN IS THE TEXTBOOK
3. DEFINITION OF "DESPARATE TREATMENT."
4. * THE RESPONDANT REFUSED TO RESPOND TO THE QUESTION.
5. * ALL OTHER OCCUPIED UNIT WOULD HAVE TO BE FORCE TO
6. PRODUCE, THE EXACT SAME DOCUMENTS. THE COMPLAINTANT CAN
7. NOT BE SINGLED-OUT FOR A WARRENTLESS PROSECUTION, WITHOUT
8. PROBABLE CAUSE. AND/OR A PROPER "BENCH WARRENT," FOR
9. PRODUCTION OF DOCUMENTS.
0. THE COMPLAINTANT IS (69) SIXTY NINE YEARS OLD LIVES ON HIS SOCIAL
1. SECURITY INCOME, SOLEY, $10,400.00 US DOLLARS A YEAR.
2. HE IS NOT REQUIRED BY FEDERAL OR STATE LAW, TO FILE
3. A TAX RETURN. HE HAS NOT FILED A TAX RETURN SINCE
4. 2013 APPROXIMATELY.
5. THE COMPLAINTANT, IS BY FEDERAL AND STATE LAW, NOT LIABLE
6. TO REPORT ANY MONETARY INCOME BELOW $2,000.00 US PER
7. YEAR.
8. THAT IS WHAT THE OBSESSION WITH FORCING ME TO PRODUCE
9. A TAX STATEMENT, WITH UNDISCLOSED FINANCIAL INCOME.
   (IS ABOUT)

(2.) OF FIVE a.D.C.

50. HYPOTHETICAL, ALLEGED, IMAGINARY, FICTICIOUS, UNDISCLOSED
61. INCOME, MIGHT APPEAR. THAT IS TOTAL FOOLISHNESS.
62. **THIRD:** IN COUNT TWO THE COMPLAINTANT CLEARLY PROVIDES
53. WRITTEN EVIDENCE OF HIMSELF, BEING CONSTANTLY SUBJECTED
54. TO UNLAWFUL ACT OF RACIAL HATRED AND DISCRIMINATION
55. WHEREBY AGAIN THE COMPLAINTANT WAS COMPLETELY
56. IGNORED WHEN COMPLAINING OF UNLAWFUL ACTS BEING
57. "ACTED-OUT," AGAINST HIM AND HIS UNIT PATIO AREA."
58. HE IS HARASSED, AND MADE VICTIM OF DOG ATTACKS BY
59. HIS NIEGHBORS, (LITTERING, TRASHING, HIS PATIO AREA).
Ø. COMPLAINTANTS CONCERNS GO UNHEARD, UNRESOLVED, FOR (6-7)
H. SIX TO SEVEN YEARS.
2. WITH TOTAL INDICATION TO, DELIBERATELY ABUSE THE COM-
3. PLAINTANT, THE RESPONDANTS, THEIR LEGAL COUNCIL,
4. AND THEIR COLLECTIVE STAFF, ARE GATHERED TOGETHER
5. TO MISLEAD, TRY TO CONFUSE, TELL ANY AND/OR TELL ALL
6. LIES, RATHER THAN BE FOUND GUILTY OF THE CRIMES STATED
7. IN THIS "INSTANT PRIMA FACIA," CASE.
8. **FOURTH:** THE RESPONDANTS ARE OBLIGATED TO ADMIT GUILT FOR
9. THE "PIT BULL'S BITE," ON BETHANY TRIPP, 126 BORDER ST.
50. UNIT 326. I HAVE READ MY LEASE, APR 7, 2021, COMMUNITY
51. POLICIES, MASTER LEASE ADDENDUM, 10.2 ANIMALS, ONLY
52. TWO ANIMALS PER UNIT (8) RESTRICTED BREEDS, BEING SOLELY
53. ON, AND YOUR ABSOLUTE DECRETION.
54. PLEASE EXPLAIN, HOW IS THAT YOUR COMPLETE LIABILITY FOR
55. WRONGFUL UNLAWFUL ACTS, COMMITTED BY THE OFFEND-
86. ING PIT BULL, IN QUESTION; FEMALE NAMED "CODA."
57. ONCE "CODA" BECAME THE ATTACKER OF A HUMAN BEING,
88. BETHANY TRIPP, BITING HER ON HER HAND, ALL OF THE
89. PREVIOUS BEHAVIOR OF "CODA" COME INTO PLAY. DOG
90. THE COMPLAINTANT EXPLAINED GREYSTAR MGNT., THE WAS
91. BEING TRAINED TO "BITE" HIM, AND WAS A VERY SERIOUS
92. DANGER, ON PROPERTY.

(3) OF FIVE a.D.C

93. THE WHITE 1'55" ON 149TH ST/GORDER ST.
92. UNIT 326, HAD (7) DOGS IN ONE, ONE BEDROOM APARTMENT/
93. UNIT. THE RESPONDANT HAS BEEN TELLING BETHANY
94. TRIPP, THEY ARE NOT LIABLE FOR HER DAMAGES, DUE TO
95. A DOG BITE FROM A "PIT BULL", AND THE RESPONDANTS
96. ARE THE SOLE REASON, THE DANGER, EXTREME
97. DANGER, WAS PRESENT.

98. THE COMPLAINTANT FEELS, THE RESPONDANT, ENGAGED
99. IN CREATING A EXTREMELY DANGEROUS LANDSCAPE,
00. MICHAEL MANDIGORIN, WHEN I REPORTED, A DOG, TRIED
01. TO ATTACK ME, IN THE HALLWAY, ON THE WAY TO HIS
02. OFFICE, HE STATED, "IT'S NOT AN EMERGENCY."
03. NOTHING, WAS EVER DONE, ABOUT THE ATTACK.
04. IT IS CLEAR TO THE COMPLAINTANT, THAT A ELEMENT OF;
05. THE RESPONDANTS ARE GUILTY OF ENGAGING IN ACTS OF
06. A.) WRECKLESS ENDANGERMENT, B.) DEPRAVED INDIFFERENCE
07.* HOW CAN THE RESPONDANT, TELL BETHANY TRIPP, THEY ARE NOT
08. RESPONSIBLE FOR HER DOG BITE?
09. HOW CAN THE RESPONDANT, TELL THE COMPLAINTANT THEY ARE
10. NOT RESPONSIBLE FOR, ALL PAIN AND SUFFERING, HE WAS
11. FORCED TO ENDURE, WHILE TRYING TO LEARN TO WALK
12. AGAIN, OUTSIDE HIS OWN HOME/UNIT. PREVENTED BY
13. (2)TWO OTHER RESIDENTS, TRYING, TO TRAIN A "PIT BULL
14. TO BITE A HUMAN BEING, THE COMPLAINTANT,
15. **FIFTH:** I DO NOT ACTUALLY KNOW KEVIN (LAST NAME:
116. UNKNOWN), HE IS A MAINTENANCE ASSITANT AT
117. BOSTONEAST APARTMENTS. EVERY STATEMENT IS
118. THE TRUTH. I HAVE ONLY RELATED WHAT I SAW AND
119 HEARD AT THE TIME. THE RESPONDANT DENIES
120. STATEMENT OF CORROBORATION BY MICHAEL MENDI-
121. GORIN, OF MY STATEMENT? HOW WOULD I KNOW WHAT

(4) OF FIVE A.D.C.

122. HAPPENED, IN DETAILS. KEVIN (ENG), IS THE ONLY ONE
123. WHO KNEW WHAT HAPPENED. HOW DID I FIND OUT, WHAT
124. WAS ALLEDGED? KEVIN TOLD ME. MICHEAL MANDIGORIN
125. VERIFIED, WHAT KEVIN RELATED WAS TRUE, CORROBORATED,
126. CONFIRMED, WHATEVER, WORDS ONE MAY CHOOSE TO USE.
127. (RESPONSE @ P.84.) KEVIN WAS NOT TERMINATED FROM GREYSTAR
128. MGNT. RESPONDANT HAS INSUFFICIENT KNOWLEDGE TO ADMIT OR DENY.
129. IS A PATENTLY DELIBERATE LIE, RESPONDANT IS FULLY AWARE
130. KEVIN IS CURRENTLY STILL WORKING, AT BOSTONEAST, AND
131. HIS FAMILY MEMBERS, HE IS A FULL-TIME EMPLOYEE.
132. RESPONDANT, PREFERS TO ENGAGE A DELIBERATE LIES.
133. AT P.84. AND P.85. THE CLEAR DEPICTION, OF HOW THE
134. RESPONDANTS HAVE NO COMMON DECENCY OR HONOR.
135. THERE ARE STILL ISSUES OF GENUINE MATERIAL ARGUEMENT, MANY.

DATE: 10 MAY 2023

Signed: Under the pains and penalties of perjury.

_Astor D. Chance_, PRO SE
ASTOR D. CHANCE

126 BORDER STREET, UNIT 104
EAST BOSTON, MA 02128·2023

TEL: (617) 970·3662        "NOTICE TO QUIT" THREAT.

ENCLOSED: (1) ONE PAGE RENT PAYMENT REMINDER.
              DID ALL HEADS OF HOUSEHOLDS RECEIVE
              ONE?

(5) OF FIVE A.D.C.



**Scolnick Laverty & Gouveia LLP**

Stephen M. Scolnick*
Mark R. Laverty
Lisa M. Gouveia
Vladimir L. Nechev
Michael J. Pavloski, LLC, Of Counsel

25 Braintree Hill Office Park, Suite 205
Braintree, MA 02184
Tel: 781-843-7700
Fax: 781-843-7703
www.slglegalgroup.com
*retired

May 1, 2023 /REC'D 5 MAY 2023                                   **VIA EMAIL**

Sabrina Zafar, Investigator
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, MA 02108

Re:     **Astor Chance**
        **v.**
        **Trinity Border Street, Owner; Greystar Management Services**
        **MCAD Docket No. 23BPR00851**

Dear Sabrina Zafar:

On behalf of Trinity Border Street, Owner and Greystar Management Services

("Respondents"), please consider this letter as our position statement for filing in the above-

referenced matter. As a preliminary matter, Greystar Management Services is not the correct

legal name of the managing agent of the premises. The name should be amended to GREP

Atlantic LLC. Furthermore, Trinity Border Street is not the current owner of the premises. The

correct name of the legal owner is Trinity Border Street Residential, LLC.

<u>INTRODUCTION</u>

On or about March 26, 2023, Astor Chance ("Complainant") filed a complaint with the

Massachusetts Commission Against Discrimination ("MCAD"). The Complainant alleged that

the Respondent violated M.G.L. c. 151B, Section 4, Paragraphs 4 and 6, and Title VIII.

Specifically, the Complainant has alleged that the Respondents have discriminated against him

on the basis of Disability, Race, and Color.

The Respondents deny each and every allegation made by the Complainant for the reasons set forth in this position statement. The allegations made by the Complainant are wholly unfounded and not supported by the facts or evidence. The MCAD should issue a finding of lack of probable cause because the Complainant will be unable to present "sufficient evidence upon which a fact finder could form a reasonable belief that it is more probable than not that the Respondent committed an unlawful practice." 804 CMR § 1.15(7)(a).

In support of this position statement, the Respondents submit herewith certain documents. In accordance with 804 CMR § 1.04(1), this position statement and the accompanying documents (shall not constitute public information.) Furthermore, pursuant to 804 CMR § 1.04(3), the Respondent requests that the MCAD treat these materials as confidential. This Position Statement is based upon the Respondents' investigation and its understanding of the facts. It may be amended or supplemented and does not constitute an affidavit or an admission of any kind. This Position Statement is submitted only to the MCAD, in its investigation of the allegations made by the Complainant and is not intended to constitute evidence in any judicial proceeding or administrative hearing.

## STATEMENT OF FACTS

GREP Atlantic LLC, is the management company for the owner of the premises, Trinity Border Street Residential, LLC. The premises are part of a multi-unit housing residential development commonly known as Boston East with a total of 200 residential units including 26 units that are designated as affordable units.

The Complainant resides at Boston East, Apartment #104, Boston, Massachusetts 02128, as a resident in a BPDA Affordable Housing Unit pursuant to a written lease agreement. (See Apartment Lease Contract attached hereto and marked as Exhibit A). The Complainant's

allegations seem to revolve around his re-certification with the BPDA affordable program at Boston East. Maloney Properties handles the recertification of the residents in these affordable units for the Respondents. As of today's date, despite several emails sent to Complainant from the Respondents and Maloney Properties, the Respondents have not received a completed application and are missing the Complainant's tax return or non-filing affidavit. As of today's date, the Respondents have also not taken any adverse action against the Complainant regarding his tenancy despite his noncompliance with the lease agreement and rules and regulations of the affordable program.

The Complainant also seems to take issues with the Respondents' management of Boston East Apartments. The Complainant, however, fails to provide any sort of documentation or discernable detail as to the allegations he makes against employees of the Respondents and how they handled alleged incidents with other residents. The majority of the Complainant's allegations seem to revolve around the Respondents' alleged mismanagement of the building, but fails to provide any evidence of discriminatory behavior or a nexus between Complainant's protected class and the Respondents' alleged conduct.

*[handwritten: Read PH ext empt]*

*[handwritten: DEB, (NFA) HAD (7) SEVEN DOGS IN UNIT 326]*

## RESPONDENTS' ANSWER TO COMPLAINT

The Complainant alleges that he was discriminated against by the Respondents on the basis of Disability, Race, and Color. The Respondents deny each and every allegation contained in the Complaint and further deny that the Complainant was discriminated against because of his Disability, Race, or Color. The Respondents approach all prospective residents and current residents in the same manner, regardless of race, color, religion, sex, handicap, disability, familial status, national origin, public assistance status or for any other reason. At all times relevant hereto, the Respondents have implemented and followed policies, procedures and

training of its employees to ensure compliance with the Fair Housing Act of 1988.

The Complainant has failed to provide any credible or substantial evidence that he was unfairly treated or discriminated against based upon his Disability, Race, or Color related to the Complainant's recertification. An investigation will reveal that there is insufficient evidence upon which a fact finder can determine that any unlawful discriminatory practice occurred. It is clear that there is no nexus between Complainant's protected class and the Respondents' alleged conduct. Furthermore, the Complainant provides no credible or substantial evidence as to who and/or what preferential treatment other residents at the property of a different Race or Color received. ✓ WFA o/(7) DOGS, @ UNIT 326

The Respondents in this matter have articulated a legitimate and non-discriminatory business reason for their actions with the Complainant related to their request for the Complainant to recertify in accordance with the BPDA affordable housing rules and regulations.

## The particulars of the Complaint:

I, Astor D. Chance, the Complainant believe that I was discriminated against by Trinity Border Street, Owner, Greystar Management Services, on the basis of age, disability, and race/color. This is in violation of M.G.L. 151B Section 5, Paragraphs 4 and 6, and Title VIII.

RESPONSE: The Respondents deny these allegations.

1. I, Astor D. Chance, Plaintiff, reside at 126 Border Street, Unit 104, East Boston, MA 02128-2073.

RESPONSE: The Respondents admit.

2. On March 10, 2017, I was the 2nd resident to move-in at Boston East apartments.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

3.  I am a black American by birth, 69 years OLD, U.S.A.F./Air Traffic Control, Federal Aviation Administration Controller, GS: II Step 4, with a honorable discharge.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

4.  Boston East Apts. is a 200-unit housing complex with 1 BR, 2 BR, 3 BR, and studio units.

RESPONSE:  The Respondents admit.

5.  Trinity Management Company is a subsidiary of Trinity Financial, 100 Devonshire Street, Boston, MA. A Fortune 500 investment company, on the NASDX and NYSE.

RESPONSE:  The Respondents have insufficient knowledge to admit or deny.

6.  Greystar Community Management, is a real estate property management company.

RESPONSE:  The Respondents deny the allegations as stated.

7.  I received a letter from Michael Soto-Mendigorin, Boston East Community Manager, regarding re-certification documents needed for lease renewal.

RESPONSE:  The Respondents admit contacting the Complainant regarding his recertification, but cannot admit as to a letter which is not identified in the complaint.

8.  I tried to obtain as many documents as I could, but I could NOT get the documents in the form he requested; (i.e. my Dept. of Mass Revenue, Proof of Status was/is state print-out, which only states my account is in "Good Standing".

RESPONSE:  The Respondents have insufficient knowledge to admit or deny.

9.  I do not owe the State of Massachusetts any money.

RESPONSE:  The Respondents have insufficient knowledge to admit or deny.

✳10. Mr. Soto-Mendigorin was insistent that I provide only the documents he requested; (i.e. my federal and state tax returns for 2020 and 2021, with W-2 and 1099 for 2020 and

2021).

RESPONSE: The Respondents deny the allegation as stated.

11. I explained I was semi-retired and lived off of my social security income.

RESPONSE: The Respondents admit receiving an email from the Complainant stating this.

12. This is when started using the word, "engaging the eviction process," and moving forward to evict based "based on non-compliance."

RESPONSE: The Respondents deny the allegations as stated.

13. I immediately contacted the Law Office of Rueben Gullman, Esq., founder of Gullman, Buschner, and Brooks, racial discrimination lawyers, with 90-100 pages of (5) five racial discrimination cases enclosed.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

14. I received my return/mail/green receipt on November 15, 2022.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

15. On or about the same day I was told by Greystar Management Apartment leasing agent, Edgar (last name unknown) that Michael would not be bothering me again. I asked what he meant?

RESPONSE: The Respondents deny the allegations.

16. Edgar explained Michael had been terminated from employment at Greystar Management.

RESPONSE: The Respondents deny the allegations as stated.

17. Things pretty much happened within (48) forty-eight hours to (72) seventy-two hours of my contacting Attorney Gullman's law office.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

18. I was never contacted by Attorney Gullman, or any of his staff.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

19. Memorandum in support 15 pages of written testimony on living conditions being abnormal and psychologically destructive for residents, pt. 1, memorandum in support, pt. 2, involved in the efforts of Ashton Lyte, Black Jamaican, unit 109, and Joseph St. Suring, Unit 102 (Haitian) uniting a "DJ" PA system with dance class, music experience into a "all residential environment" which violates the City of Boston zoning, and zoning variances, statutes, and regulations.

RESPONSE: The Respondents deny the allegations.

20. "Tenants cannot change zoning just by starting a dance party, pt. 2 is (3) three pages, plaintiff plea for out of court settlement.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

21. It is unlawful to turn residential space into a "cash making nightclub" blasting music "after hours nightclub."

RESPONSE: The Respondents have insufficient knowledge to admit or deny. To the extent a response is required, the Respondents deny the allegations.

22. Jeffrey C. Turk refused to communicatee with me and tried to make a joke of my being victimized by Trinity Management Companies employees and staff.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

23. According to Jeffrey C. Turk, it is time to open my file and decide my compensatory and punitive damages due to the voluminous and many unlawful acts I was forced to suffer while living at 126 Border St. Unit 104.

RESPONSE: The Respondents deny that the Complainant is entitled to any damages. With respect to the Complainant's conversation with Attorney Turk, the Respondents have insufficient knowledge to admit or deny.

24. U.S. Treasury/IRS notice March 13, 2023, CP13: 4 pgs.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

PROVIDED IRS PROOF

25. Amount due balance: $0.00.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

26. Taxes paid in full.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

27. Mass tax connect, good standing, confirmation 2 pgs. 10/12/22

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

28. Citizens Bank; money order #611530519-2 $793.00.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

29. This interest is exempt from state and local tax. (1) pg.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

30. H&R Block; ofc. 19978 receipt for SVC rendered $30.00 Camille Mahoney Senior Analyst card.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

31. Before he was terminated Michael Soto-Mendigorin signed a contract with Aston Lyte and Joseph Saint Surin, unit 109 and unit 102, to allow another loud music event it tremendously loud awful ended at 8 pm.

RESPONSE: The Respondents deny the allegations as stated.

32. Mr. Mendigorin he would allow another loud noise event, he lied.

RESPONSE: The Respondents deny the allegations as stated.

33. In the Spring of 2021 Robyn Agostino, Community Mang., began a rent increase process.

RESPONSE: The Respondents deny the allegations as stated.

34. Whereby my rent was increased $50.00 per month or $600.00 per year.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

35. Approximately (15) fifteen months later, M. Soto-Mendigorin tries to insinuate I cannot be trusted to file my taxes correctly and that is grounds to "evict me" absent the requisite proof of any wrongdoing on my part.

RESPONSE: The Respondents deny the allegations.

36. Threatening me with legal prosecution.

RESPONSE: The Respondents deny the allegations.

37. After Robyn Agostino, Community Mang. Did not return after Covid, Andrew Gemian, Mang., and Jose Lopez, Assistant Mang. began working at Boston East Apts.

RESPONSE: The Respondents have insufficient knowledge to admit or deny as the Complainant does not provide a specific timeline, only a general "after Covid."

38. I remember stating to Joseph Saint Suring, Unit 102, that Gemian and Lopez looked like the "High School Drop" property management crew.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

39. They began letting anyone move in, many unsavory characters.

RESPONSE: The Respondents deny the allegations.

40. Two in particular was a couple, a Hispanic male adult, Emilio, last name unknown, and his female friend Deb, white female adult.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

41. The two would sit along an empty field and chain smoke cigarettes all morning, afternoon, and evening.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

42. From first, I said to Joseph Saint Surin, "Those two people are drug-addicted, drunken alcoholics," and that no ~~good could~~ good could come of their presence on property.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

→ 43. I suffer from hereditary heart disease.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

44. From October 2020 until March 15, 2021, I was unable to walk.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

45. I received medical treatment at East Boston Neighbor Health Clinic, 10 Gove St., E. Boston.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

46. After medical treatment it has taken (2½) two and a half years for me to walk correctly again.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

→ 47. I had to walk many hours a day just to get my muscles loose enough to work properly.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

→ 48. Now comes Emilio and Dev with a newly acquired pit bull, and they wish to walk around with a pit bill, threatening their neighbors; Nola/Coda dog's name. BULL

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

49. I argued with Gemian/Lopez endlessly, it was a public safety issue, totally inappropriate GEMEON in is a high-density residential housing environment if the bit anyone… PITBULL

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

50. I could not walk in front of my own apartment unmolested.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

51. Emilio and Deb would walk behind me, and encourage the pit bull too growl and try to attack me.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

52. At that time, I had a pronounced limp in my walk gate.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

53. Emilio and Deb, thought it was funny.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

54. I complained to Gemian and Lopez for 3-4 months.

RESPONSE: The Respondents deny the allegations.

55. Gemian and Lopez stated they had given a "reasonable use" exemption for the "pit bull" to stay in Unit 429 with Emilio and Deb.

RESPONSE: The Respondents deny the allegations as stated.

56. Greystar Management was intentionally placing in danger, to get residents to move-out, rent prices could be increased.

RESPONSE: The Respondents deny the allegations.

57. I could I could not afford to move out.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

58. Gemian and Lopez were relocated, not terminated as should have been.

RESPONSE: The Respondents deny the allegations

59. Enters Michael Soto-Mendigorin, Mang., Greystar.com.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

60. Sometime in late August 2022, Bethany Tripp, Unit 326, 126 Border St., E. Boston, MA was sitting with her dog "Oliver" and Emilio forced himself and his pit bull dog/Coda, upon Bethany Tripp and her dog Oliver.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

61. The dogs started growling and Coda attacked Oliver.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

62. Bethany Tripp put her hand up to protect her dog, Oliver.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

63. She was bitten by the pit bull, the bite drew blood, she had to seek medical treatment.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

64. The emergency room bill was $600.00, she has not paid the bill.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

65. Greystar Mang., and Gemian and Lopez are at fault and totally liable for all expenses and pain and suffering, time loss from work, etc.

RESPONSE: The Respondents deny the allegations.

66. Ms. Tripp has never been properly compensated for loss because of Greystar Management failure to protect resident of Boston East Apts.

RESPONSE: The Respondents have insufficient knowledge to admit or deny. The Respondents deny that it violated failed to act in any way.

67. When Boston City Hall, Animal Control, came to remove the pit bull after the bite, other white residents hid the pit bull so animal control could not locate the dog called "Coda."

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

68. I was told by Michael Soto-Mendigorin as he laughed.

RESPONSE: The Respondents deny the allegations.

69. I saw Emilio walking Coda as if there was not problem in his world.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

70. After that, Deb had a mental health breakdown and moved back to her parents' home in Malden.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

71. Emilio (LNU) a cement union member was out of work over two years.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

72. Finally Emilio was evicted for nonpayment of rent.     

RESPONSE: The Respondents have insufficient knowledge to admit or deny.     

73.     I never saw Emilio or pit bull/Coda again.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

74. I have enclosed photos of Emilio and Deb, sitting outside my unit at 5:30 a.m. chain smoking cigarettes, acting like they are watching their telephones.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

75. I protested to the Boston Police Dept. and also to Michael Soto-Mendigorin.     

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

76. Neither intervened on my behalf to ask Emilio and Deb to sit somewhere else.

RESPONSE: The Respondents deny the allegations as stated.

77. My requests fell on deaf ears.

RESPONSE: The Respondents deny the allegations as stated.     

78. I feel Emilio and Deb were used as irritants to cause other residents to away from Boston East Apts. intentionally and deliberately for Greystar Management.

RESPONSE: The Respondents deny the allegations.

79. They did not pay rent for more than (2) two years.

RESPONSE: The Respondents deny the allegations as stated.

80. That arrangement was put in jeopardy when maintenance man, Kevin (LNU) was caught dancing with Deb in his arms by Emilio.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

81. Emilio made a complaint against Kevin (LNU).

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

82. Kevin told me himself.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

83. Michael Mendigorin corroborated what Kevin told was indeed true.

RESPONSE: The Respondents deny the allegations.

84. Kevin was not terminated from Greystar Management.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

85. Kevin is married with two sons.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

86. Eric Soto is currently working on Seaport Blvd, real estate property.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

87. Jesse Friedman could be work there also.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

88. The term constructive eviction is known and explained as when a landlord engages in negative acts, i.e. cut-off electric service, heat, water, refuse repairs of glass windows to force resident to vacate the premises. (See City of Chicago v. Cabrini Green Housing Project. Chicago, Ill.

RESPONSE: The Respondents have insufficient knowledge to admit or deny.

89. Creating a hostile living environment, which is unlawful.

RESPONSE: The Respondents deny the allegations as stated.

## COUNT ONE

The Respondents deny all of the allegations in this count and further deny that they engaged in any discriminatory or unlawful behavior.

## COUNT TWO

The Respondents deny all of the allegations in this count and further deny that they engaged in any discriminatory or unlawful behavior. The Respondents also deny that the Complainant is entitled to any compensatory or punitive damages.

## COUNT THREE

The Respondents deny all of the allegations in this count and further deny that they engaged in any discriminatory or unlawful behavior. The Respondents also deny that the Complainant is entitled to any compensatory or punitive damages as a result of any alleged unjust enrichment.

## COUNT FOUR

The Respondents deny all of the allegations in this count and further deny that they engaged in any discriminatory or unlawful behavior, including, but not limited to, the alleged fraud.

If Mr. Chance is evicted after the manner in which he suffered for the last (6) six years of constant harassment, dog attacks, etc. is clear illustration neither Respondent acted in a moral, ethical, or professional manner. There is no dog policy written and posted for all to see. There are prescribed penalties for violations of rules/regulations. Dogs d not have a training certificate of obedience training. $35.00 per month, dogs, $50.00 per month. Management tries to cut a deal with each dog owner, separately in secrecy. (Ex. Kenny/tea cup Yorkshire terrier, attacked, $1,300.00 veterinarian bill, by (2) Russian wolfhounds, left him for dead, Unit 101 and Unit 112). That is not property management. Mr. Chance moves for judgment in the aforementioned unlawful acts, and awarding of compensatory and punitive damages, whatever this court deems reasonable and just. Mr. Chance has suffered painfully and grievously. In summary and conclusion, I seek a favorable review to all my plea "to be made whole, by way of restitution//counts of.

RESPONSE:  The Respondents deny the allegations stated in the Complainant's conclusory paragraph. At all relevant times, the Respondents have complied with any and all relevant guidelines/laws. The Respondent further state that their lease agreements contain an Animal Addendum which they make all residents with pets execute. Furthermore, the Respondents' lease contains clearly enumerated community policies which the Respondents uniformly enforce.

ARGUMENT

I.  <u>THE COMPLAINANT HAS FAILED TO SHOW THAT HE WAS TREATED DIFFERENTLY FROM OTHER TENANTS AND/OR DISCRIMINATED AGAINST BECAUSE HIS PROTECTED CLASS BY THE RESPONDENTS.</u>

The Complainant has failed to provide any credible or substantial evidence that he was unfairly treated or discriminated against based upon his Disability, Race, or Color related to Respondents' request that the Complainant complete his recertification and to the Respondents general management of the building. An investigation will reveal that there is insufficient evidence upon which a fact finder can determine that any unlawful discriminatory practice occurred. It is clear that there is no nexus between Complainant's protected classes and the Respondents' alleged conduct relating to their recertification requests and general management of the building. Furthermore, the Complainant provides no credible or substantial evidence as to who and/or what preferential treatment other residents at the property of a different Race or Color or without a Disability received.

The Respondents in this matter have articulated a legitimate and non-discriminatory business reason for their actions with the Complainant related to their request that the Complainant complete his recertification. Specifically, the Respondents have an obligation to the BPDA to enforce recertification of residents throughout the property or risk noncompliance. Finally, the Respondents in fact require all residents that are part of the affordable program to complete their annual recertification in order to remain in compliance with the BPDA regulations.

CONCLUSION

The Respondents do not discriminate on the basis of race, color, religion, national origin, sex, sexual orientation, age, pregnancy, physical or mental disability, veteran status, public

assistance, section 8 status or any other basis protected by law. Neither the Respondents nor their agents discriminate. The Respondent is entitled to a dismissal of the charges because Complainant cannot establish a prima facie case of discrimination based upon Race, Disability, and Color. There is insufficient evidence upon which a fact-finder could form a reasonable belief that it is more probable than not that Respondents committed an unlawful practice of discrimination.

Wherefore, Respondents request that the MCAD issue a finding of lack of probable cause and dismiss the alleged charges brought by Complainant.

I DECLARE UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30 DAY OF APRIL 2023 THAT I HAVE READ THIS POSITION STATEMENT (INCLUDING ANY ATTACHMENTS) AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

*Stephanie Donlin*

Stephanie Donlin, Senior Director, Real Estate for GREP Atlantic LLC

DATE: 5/1/23

*Vladimir L. Nechev*

Vladimir L. Nechev, Esq. (BBO: 688606)
Attorney for Respondent
Scolnick Laverty & Gouveia, LLP
25 Braintree Hill Office Park, Suite 205
Braintree, MA 02184
Tel: (781) 843-7700
Email: vnechev@slglegalgroup.com

I DECLARE UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30 DAY OF
APRIL 2023 THAT I HAVE READ THIS POSITION STATEMENT (INCLUDING ANY
ATTACHMENTS) AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY
KNOWLEDGE, INFORMATION, AND BELIEF.

*Stephanie Donlin*

Stephanie Donlin, Senior Director, Real
Estate for GREP Atlantic LLC

DATE: 5/1/23

*Vladimir L. Nechev*

Vladimir L. Nechev, Esq. (BBO: 688606)
Attorney for Respondent
Scolnick Laverty & Gouveia, LLP
25 Braintree Hill Office Park, Suite 205
Braintree, MA 02184
Tel: (781) 843-7700
Email: vnechev@slglegalgroup.com